Andrew D. Bluth (SBN 232387)
Chritopher R. Rodriguez (SBN 212274)
SINGLETON SCHREIBER, LLP
1414 K St Ste 300
Sacramento, CA 95814-3966
Telephone: 916-775-5894
Facsimile: 619-255-1515
abluth@singletonschreiber.com

Maggy Krell (SBN 226675)
3053 Freeport Blvd. #152
Sacramento, CA 95818
Telephone: 916-529-0468
maggykrell@gmail.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ASSEMBLYWOMAN MAGGY KRELL, an individual,<br><br>Plaintiff,<br><br>v.<br><br>EXECUTIVE OFFICE FOR IMMIGRATION REVIEW,<br><br>Defendant. | Case No:<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff ASSEMBLYWOMAN MAGGY KRELL ("Plaintiff"), brings this action against the EXECUTIVE OFFICE FOR IMMIGRATION REVIEW ("EOIR" or "Defendant") and alleges as follows:

## I. SUMMARY OF THE CASE

1. This action arises under the Freedom of Information Act (FOIA), 5

U.S.C. § 552 et seq., and seeks declaratory and injunctive relief compelling Defendant Executive Office for Immigration Review ("EOIR") to comply with their statutory obligations to disclose agency records. Specifically, Plaintiff seeks records reflecting guidance, policies, instructions, communications, and related documents and security footage concerning the unannounced and illegal closure of public buildings and the arrests of people attending mandated hearings at California immigration courts—an enforcement practice that represented a significant shift in Immigration and Customs Enforcement (ICE) and EOIR operations, and has generated substantial public concern and judicial scrutiny.

2. FOIA was enacted to ensure an informed public and to permit meaningful oversight of federal government activity. Defendant's failure to timely process Plaintiff's request, grant expedited processing, disclose non-exempt responsive records, and prematurely and unilaterally close requests without adequate meet and confer has unlawfully deprived Plaintiff, and by extension, the public of information necessary to understand the scope, rationale, and implementation of these immigration court arrest practices. The Defendant's refusal to release records deprives Plaintiff and the public from the transparency that the law requires. Hiding information from the public in the context of cruel and sometimes unlawful immigration arrests amounts to a coverup.

3. Plaintiff seeks relief to remedy Defendant's ongoing violations of FOIA and to ensure prompt disclosure of records that will inform active public debate, pending litigation, and judicial consideration concerning arrests conducted in EOIR-controlled facilities and proceedings.

4. After President Trump took office, the EOIR and ICE rescinded policies barring ICE from making civil immigration arrests in or near immigration courts to advance the new administration's agenda of mass deportations. These changes necessarily required internal guidance, inter-agency coordination, and communications involving EOIR personnel, immigration judges, court

administrators, and officials within the DOJ.

5. Since around May 20, 2025, ICE has been detaining noncitizens appearing for hearings in removal proceedings in immigration courts nationwide in substantial numbers, including at immigration courts in Sacramento and throughout California.

6. Attorneys from ICE's Office of Principal Legal Advisor ("OPLA") have also been orally moving to dismiss these removal and/or asylum proceedings to funnel noncitizens into expedited removal, a process with fewer due process protections and no pathway to permanent residence. Moreover, as part of an underhanded effort to enforce the administration's new policies, Plaintiff is informed and believes that EOIR directed immigration judges to grant ICE's Office of Principal Legal Advisor ("OPLA") motions to dismiss immigration proceedings immediately in violation of several agency policies, and to bring these individuals into the immigration courts where ICE was waiting to detain them.

7. Federal courts across the country, from Oregon to New York, have expressed serious concerns regarding arrests conducted in connection with immigration court proceedings and the dismissal of those proceedings, including concerns related to due process and procedural fairness. See, e.g., *Lopez Benitez v. Francis*, No. 25 Civ. 5937, 2025 WL 2371588, at *15 (S.D.N.Y. Aug. 13, 2025) ("[T]reating attendance in immigration court as a game of detention roulette is not consistent with the constitutional guarantee of due process."); *Mata Velasquez v. Kurzdorfer*, No. 25-cv-493, 2025 WL 1953796, at *13 (W.D.N.Y. July 16, 2025) (chastising DHS for "pull[ing] the rug out from under [petitioner]"); Maxine Bernstein, Federal Judge in Oregon: Homeland Security 'Tricked' Asylum Seeker Before Arrest at Immigration Court, The Oregonian (July 15, 2025, 10:47 AM), https://tinyurl.com/mw3w9xdj (reporting that a federal judge "blasted" the DHS for its "series of procedural errors," "'oscillating legal positions' and clear violation of [a noncitizen]'s due process rights").

8. A court in the Southern District of New York has also preliminarily stayed the EOIR's direction to immigration judges to grant dismissals regarding removal proceedings conducted in Manhattan and the Bronx pending further litigation. Op. & Order at 46, *African Cmtys. Together v. Lyons*, 25-cv-6366 (S.D.N.Y. A Sept. 12, 2025), ECF No. 51. And similar challenges to the lawfulness of arrests and dismissals in other immigration courts are pending elsewhere. See, e.g., Compl., *A.M. v. U.S. Dep't of Homeland Sec.*, 25-cv-2308 (S.D. Cal. Sept. 4, 2025), ECF No. 1 (addressing these arrests and dismissals at the San Diego Immigration Court); Am. Compl., *Pablo Sequen v. Albarran*, No. 25-cv-6487 (N.D. Cal. Sept. 18, 2025), ECF No. 32 (same for the Concord, Sacramento, and San Francisco Immigration Courts).

9. A court in San Francisco enjoined ICE from making future arrests in northern area courts, finding that the arrests had a chilling effect on immigrants' access to justice and presented them with an untenable Hobsons's choice.[1]

10. Beyond the courts, outrage at immigration court arrests, dismissals, and their contested legality has prompted public pushback: protestors have demonstrated outside immigration courts in California and around the country against these new enforcement tactics and have attempted to stop ICE from transporting arrested noncitizens to detention centers; clergy, military veterans, political leaders, and other members of the public have accompanied noncitizens to their removal hearings to document, and try to prevent, arrests (and at times are facing arrest themselves for doing so); and editorial boards are calling for Defendants to cease immigration court arrests and dismissals.

11. Sacramento (as well as the rest of California) has been no exception to the national trends. Sacramento residents have been deeply affected as members of their families and communities who were lawfully attending their hearings were

[1] *Pablo Sequen v. Albarran*, No. 25-CV-06487-PCP, 2025 WL 3724878, at *20 (N.D. Cal. Dec. 24, 2025)

arrested without warning. Without knowing the details of the policy change, or the circumstances of the arrests, residents have had to worry whether they, or those they care about, are also at risk.

12. Immigration court arrests and dismissals have also generated widespread and exceptional media interest. National, state, and local media outlets have published over two hundred articles about these enforcement tactics since May 20, 2025, dozens of which express doubt about their integrity and legality. This ongoing public attention underscores the urgency of informing the public about the policies and coordination underlying these practices while they are actively being implemented and litigated.

13. Amidst this widespread media attention and public outrage, Plaintiff Krell, an elected legislator whose constituents are among those directly impacted by the activities at EOIR immigration courts and beyond, filed a FOIA request with EOIR on June 14, 2025. The narrowly tailored request followed EOIR's closure of the Sacramento Immigration Court, where family members, journalists and lawyers were prohibited from entering the public building while immigration proceedings were pending. Plaintiff Krell sought records related to directives, memorandums or correspondence that would explain the justification for closing the building to the public. A true and correct copy of this June 14, 2025 FOIA request is attached hereto as **Exhibit A**. Plaintiff Krell received a heavily redacted response, including correspondence directly involving the California Immigration Project and its attorneys' exclusion from the courthouse preventing awaiting clients their access to legal aid. Not surprisingly, these heavily redacted documents left more questions than answers.

14. On August 11, 2025, plaintiff Krell submitted a subsequent narrowly-tailored FOIA request to EOIR that seeks documents related to agency guidance for courthouse arrests; certain communications with DHS about such arrests and dismissals; security footage of the arrests; communications to and from specific

individuals regarding specific topics including courthouse closures; and other relevant documents within a very narrow timeframe. A true and correct copy of this August 11, 2025 FOIA request is attached hereto as **Exhibit B.**

15. Assemblymember Krell sought expedited processing of each request to educate the public about the policies, guidance and communications about these immigration court arrests.

16. Now, six months later, having received neither expedited processing nor any records responsive to her requests, Plaintiff brings this FOIA action for injunctive and other appropriate relief.

17. Plaintiff submitted a valid FOIA request to EOIR on August 11, 2025, seeking agency records reasonably described and directly related to EOIR's operations, guidance, and coordination concerning arrests conducted in or around immigration courts and the dismissal of removal proceedings.

18. The requested records are "agency records" within the meaning of FOIA because they were created or pertained to EOIR personnel and are maintained under the agencies' possession or control in the course of official business.

19. Defendant was required to make a determination regarding Plaintiff's request within twenty working days, 5U.S.C. § 552(a)(6)(A)(i), and to determine whether to grant expedited processing within ten calendar days, id. § 552(a)(6)(E)(ii)(I).

20. Defendant failed to comply with these statutory deadlines, failed to grant expedited processing, and failed to produce any responsive, non-exempt-records. Defendant also failed to make a timely determination even accounting for any permissible extension under 5 U.S.C. § 552(a)(6)(B).

21. Defendant has therefore constructively exhausted Plaintiff's administrative remedies pursuant to 5U.S.C. § 552(a)(6)(C).

22. Defendant has failed to conduct a search reasonably calculated to

locate all records responsive to Plaintiff's request.

23. To the extent Defendant has withheld records or portions of records, they have failed to justify withholdings with the specificity required by FOIA.

24. Defendant has closed certain requests without providing sufficient justification, and has even done so over Plaintiff's objections.

25. Defendant has also failed to release reasonably segregable, non-exempt portions of responsive records, as required by 5U.S.C. § 552(b).

26. Defendant's ongoing failure to comply with FOIA has irreparably harmed Plaintiff and the public by preventing timely access to information concerning actual federal government activity that is the subject of widespread public debate and active judicial review.

## II. PARTIES

27. Plaintiff MAGGY KRELL is a California State Assemblywoman for District 6 which includes large portions of Sacramento and the surrounding area. Her district includes the John Moss Federal Building where immigration arrests have been occurring regularly. Ms. Krell has a vested interest in knowing what is happening to her constituents and their family members as well as understanding the impact of federal policy throughout California to inform her state policy making. This is especially true with regard to the arrests taking place at immigration courts within California, and specifically within District 6, where constituents are presenting themselves for federal immigration hearings.

28. Defendant EOIR is a subcomponent of the DOJ and an "agency" within the meaning of 5 U.S.C § 552(f)(1), 5 U.S.C. § 552(f), and 5 U.S.C. § 702. EOIR administers the immigration court system, including through "the supervision, direction, and scheduling of the immigration judges in the conduct of the hearings and duties assigned to them." 8 C.F.R. § 1003.9(b). It "issue[s] operational instructions and policy" and otherwise "manage[s] the docket of matters to be decided by the immigration judges." Id. § 1003.9(b)(1), (3). The

EOIR has possession, custody, or control of records responsive to Plaintiffs' FOIA requests.

## III. JURISDICTION AND VENUE

29. This Court has subject matter jurisdiction over this action pursuant to the Freedom of Information Act, 5 U.S.C. § 552(a)(4)(B), and 28 U.S.C. § 1331.

30. This Court has authority to grant declaratory and injunctive relief pursuant to 5U.S.C. § 552(a)(4)(B), and 28 U.S.C. §§ 2201-2202.

31. Venue is proper in this Court pursuant to 5U.S.C. § 552(a)(4)(B) because Plaintiff Krell represents this district, and/or because agency records responsive to Plaintiff's request are situated in this district.

32. Defendant is an agency of the United States and is subject to suit in this Court under FOIA.

## IV. FACTUAL BACKGROUND

### A. ICE ARRESTS & DISMISSALS AT IMMIGRATION COURTS

#### i. ICE Arrests in Sacramento and Other Parts of California

33. Starting in May 2025, ICE changed a long-standing policy and began enforcing civil immigration enforcement arrests in and around immigration courts. EOIR judges, at the direction of their superiors, acted in concert with ICE agents to dismiss cases which then allowed ICE to immediately detain individuals and put them into expedited removal.

34. Upon information and belief, at least six detentions occurred at the Sacramento Immigration Court as of June 11, 2025.[2] According to records obtained by the Sacramento Bee, 39 people were detained after attending routine immigration hearings from May 27 through late September.[3] Then in December,

---

[2] https://www.youtube.com/watch?v=CAMIMaqf3T4

[3] https://www.sacbee.com/news/local/article314296524.html#storylink=cpy

at least a dozen Afghan refugees were arrested during their check ins.[4] Around 130 total arrests were made in the San Fransico and Concord Immigration Courts by December 26, 2025.[5] During July 2025, it was not uncommon for there to be daily arrests in Sacramento.[6] In some instances, the arresting officers have utilized physical force and caused individuals not being detained to be injured.[7]

35. These enforcement techniques were unprecedented. In sworn declarations, several witnesses noted that for decades prior to May 2025, ICE only arrested individuals at Immigration Courts in limited circumstances.[8]

36. These extreme measures have led to fear and confusion in local communities.[9] Large numbers of individuals are no longer attending their immigration hearings because they are worried they will be detained if they do.[10]

### ii. Courthouse Arrest Policies & Practices Before the Second Trump Administration

37. For decades, ICE officers largely refrained from civil immigration enforcement actions—including civil immigration arrests—in immigration courts, lest such arrests deter noncitizens from attending removal proceedings, impede the proper functioning of courts, and undermine the fair administration of justice.

38. ICE formalized this longstanding practice in an April 2021 memo that prohibited "civil immigration enforcement action … in or near a courthouse" (including immigration courts) absent a national security threat; imminent risk of

---

[4] https://www.sacbee.com/news/local/article313404644.html

[5] https://www.ktvu.com/news/judge-orders-halt-ice-arrests-san-francisco-courthouse

[6] https://www.capradio.org/articles/2025/07/11/ice-arrests-asylum-seeker-after-sacramento-court-hearing/

[7] https://www.sacbee.com/news/local/article312274458.html

[8] *Pablo Sequen v. Albarran*, No. 25-CV-06487-PCP, 2025 WL 3724878, at *2 (N.D. Cal. Dec. 24, 2025)

[9] https://www.capradio.org/articles/2025/07/11/ice-arrests-asylum-seeker-after-sacramento-court-hearing/

[10] https://www.sacbee.com/news/local/article312274458.html

death, violence, physical harm to any person, or destruction of evidence material to a criminal case; or hot pursuit of an individual posing a threat to public safety. U.S. Dep't of Homeland Sec., Memorandum re: Civil Immigration Enforcement Actions in or near Courthouses (Apr. 27, 2021), https://tinyurl.com/yw6ucd49.

39. Approximately two and half years later, the EOIR prohibited the DHS from making civil immigration arrests and taking other civil immigration enforcement actions "in or near an immigration court" except in the limited circumstances described above or where "a safe alternative location for the enforcement action d[id] not exist." U.S. Dep't of Just., Exec. Off. for Immigr. Review, Off. of the Chief. Immigr. Judge, PM 23-01, Operating Policies & Procedures Memorandum 23-01: Enforcement Actions in or Near OCIJ Space (Dec. 11, 2023), https://tinyurl.com/ycyr2hsy.

**iii. Trump Administration's Mass Deportations**

40. The Trump administration initiated a "light speed" mass deportation campaign designed to significantly increase ICE's enforcement power. To drive immediate results, officials established initial daily quotas of more than 1,000 arrests and threatened to hold agency leadership accountable for any shortfalls.

41. When ICE struggled to reach these targets through the early months of 2025, the administration responded by removing the acting director and several other top immigration officials. By May, frustration over the pace of enforcement led the administration to "supercharge" the effort, doubling the daily arrest goal to 3,000 individuals. This escalation included further leadership changes within the Enforcement and Removal Operations Directorate to ensure strict adherence to the administration's expanded deportation agenda.

**iv. Immigration Court Arrests, Dismissals, & Policy Changes**

42. Meanwhile the Administration authorized ICE to conduct civil immigration arrests in and around immigration courts to help it meet its daily quota.

a. On January 21, 2025, ICE rescinded the April 2021 memo. On an interim basis, it also authorized agency officers or agents to "conduct civil immigration actions in or near courthouses when they have credible information that leads them to believe the targeted [noncitizen(s)] is or will be present at a specific location, and where such action is not precluded by the jurisdiction in which the enforcement action will take place." U.S. Immigr. & Customs Enf't, Policy No. 11072.3, Interim Guidance: Civil Immigration Enforcement Actions in or near Courthouses (Jan. 21, 2025).

b. Seven days later, the EOIR "rescinded and cancelled" its prohibition of "civil immigration actions by the Department of Homeland Security (DHS) in or near EOIR space." U.S. Dep't of Just., PM 25-06, Cancellation of Operating Policies & Procedures memorandum 23-01 (Jan. 28, 2025).

43. Around May 20, 2025, as the number of arrests and deportations remained below target, ICE began to arrest noncitizens in immigration courts – where they are easy to locate – and seek their removal through expedited removal[11] – a faster process with fewer due process protections and no pathway to permanent residence.

44. ICE also instructed OPLA prosecutors to identify any noncitizen with upcoming immigration court hearings who would be susceptible to expedited removal if their immigration court case were dismissed and move to dismiss these cases. It further directed OPLA prosecutors to tell ERO officers about such a noncitizen at least 48 hours in advance of the upcoming hearing and provide "the exact location of the courtroom at which the . . . hearing is being held and an

[11] Expedited removal allows immigration officers to remove a noncitizen who has "not been admitted or paroled in the United States" and "not affirmatively shown, to the satisfaction of an immigration officer" continuous physical presence for at least two years, from the United States "without further hearing or review" unless the noncitizens "indicates either an intention to apply for asylum . . . or a fear of persecution." 8 U.S.C. § 1225(b)(1)(A).

estimate of the time frame for the hearing." It also ordered OPLA prosecutors to give the immigration court "a 24-hour warning" of the planned enforcement operation.[12] These directives necessarily required coordination with EOIR personnel and advance notice to immigration courts, generating records maintained by EOIR.

45. On May 27, 2025, ICE published its final guidance for courthouse arrests, wherein it authorized agency officers and agents to "conduct civil immigration enforcement actions in or near courthouses when they have credible information that leads them to believe the targeted [noncitizen(s)] is or will be present at a specific location," even in jurisdictions whose laws preclude courthouse arrests. U.S. Immigr. & Customs Enf't, Plicy, No. 11072.4, Civil Immigration Enforcement Actions in or near Courthouses (May 27, 2025).

46. Around the same time, the EOIR emailed Assistant Immigration Judges (ACIJs)[13] new guidance for ICE motions to dismiss and courthouse arrests. Notwithstanding agency regulations and policy requiring parties to make pre-trial motions "in writing and . . . state, with particularly the grounds therefor," 8 C.F.R. 1003.23(a), the guidance allows "DHS Motions to Dismiss [to] be made orally and decided from the bench" without "additional documentation or briefing." Am. Immigr. Lawyers Ass'n, AILA Doc. 25061204, Practice Aleret: EOIR Guidance to Immigration Judges on Dismissals and Other Adjudications (June 12, 2025), https://tinyurl.come/mr22255e (herinafter, "AILA Doc. 25061204").

47. The guidance also advises that "[t]he motion to dismiss is regulatory" based upon Immigration and Nationality Act (INA) 239.2(a)(6) (Notice to Appear "improvidently issued") or INA 239.2(a)(7) ("[C]ircumstances have changed to such an extent that continuation is no longer in the best interest of the

[12] Hamed Aleaziz et al., How ICE is Seeking to Ramp Up Deportations Through Courthouse Arrests, N.Y. Times (May 30, 2025), https://www.nytimes.com/2025/05/30/us/politics/ice-courthouse-arrests.html

[13] ACIJs "oversee the operations of specific immigration courts and adjudication centers." U.S. Dep't of Just., Exec. Off. for Immigr. Rev., Immigration Court Practice Manual § 1.3(a)(4) (2023).

government"), *id*, misstating the standard for dismissal for changed circumstances. *cf*. 8 C.F.R. 239.2(a)(7), (c) (Circumstances *of the case* have changed after the notice to appear was issued to such an extent that continuation is no longer in the best interest of the government" (emphasis added).

48. The guidance further provides that "[g]enerally, if DHS has met the regulatory burden, the oral motion to dismiss may be granted" without "[a] 10-day response period," AILA Doc. 25061204, despite agency policy giving noncitizens ten days to respond to such motions, U.S. Dep't of Just., Exec. Off. for Immigr. Rev., Immigration Court Practice Manual 3.1(b)(1)(A) (2023).

49. Finally, the guidance directs ACIJs to ensure the immigration judges and administrative staff under their supervision "are familiar with Policy Memo 25-06"—which rescinded past guidance barring ICE arrests at immigration courts—and to reach out to the Regional Deputy Chief Immigration Judge supervising them if they "encounter any unusual circumstances with an enforcement action." AILA Doc. 25061204.

50. Pursuant to this guidance, ACIJs have directed and pressured immigration judges they supervise to grant ICE motions to dismiss unless they are defective.

51. ICE has arrested thousands of noncitizens in immigration courts around the country since May.

52. ICE also filed 6,221 motions to dismiss noncitizens' removal proceedings between May 20, 2025, and July 28, 2025, almost 81 percent of which were oral.

53. Immigration judges adjudicated 86 percent of these motions on the day filed, granted 86 percent of those motions, and dismissed 4,558 noncitizens' removal proceedings, allowing ICE to put them into expedited removal. These figures underscore the scale and systemic nature of the policy shift, and the resulting public interest in disclosure of the guidance and communications

governing these practices.

54. ICE is continuing to arrest noncitizens in immigration courts around the country and move to dismiss their removal proceedings.

**v. Public Pushback Against Immigration Court Arrests and Dismissals and Court Findings of Illegality**

55. Immigration court arrests and dismissals have outraged the American public and prompted massive push back.

56. Protestors are demonstrating against these arrests and dismissals outside immigration courts across the country, including in Sacramento, San Francisco, Los Angeles, and San Diego, and attempting to prevent ICE from transferring arrested noncitizens to detention centers.

57. Clergy, military veterans, political leaders, and other members of the public are accompanying noncitizens to immigration courts to document, and try to stop, courthouse arrests; comfort the families that ICE is separating; and inform immigration attorneys of arrests so they can file habeas petitions before ICE transfers arrested noncitizens out of the jurisdiction.

58. U.S. Senators and other members of Congress have written to Defendants to express "grave concern over the disturbing pattern of [agency] operations taking place at immigration court across the country— including recent incidents … where masked, plainclothes ICE officers detained non-violent, non-criminal immigrants immediately following the dismissal of their existing deportation cases by DHS attorneys."[14]

59. Numerous editorials have decried immigration court arrests and

---

[14] See, e.g., Letter from Members of Congress to Kristi Noem, Sec'y, Dep't of Homeland Sec., and Todd Lyons, Acting Dir., U.S. Immigr. & Customs Enf't (June 5, 2025), https://www.aila.org/86-representatives-urge-dhs-to-end-arrests-at-immigration-courts; Letter from U.S. Senators to Kristi Noem, Sec'y, U.S. Dep't of Homeland Sec., Todd Lyons, Acting Dir., U.S. Immigr. & Customs Enf't, and Pam Bondi, Att'y Gen., U.S. Dep't of Just. (July 11, 2025), https://tinyurl.com/52yrx4p3.

dismissals as “a set-up,”[15] “a farce,”[16] “shameful,”[17] and “seriously disturbing.”[18]

60. Lawyers have challenged dozens of immigration court arrests in habeas petitions.

61. Courts considering these petitions have found that the arrests are likely unlawful and ordered ICE to release the arrested noncitizens. See, e.g., *Lopez-Arevelo v. Ripa*, No. EP-25-cv-337, 2025 WL 2691828, at *1, *12 (W.D. Tex. Sept. 21, 2025); *Pablo Sequen v. Kaiser*, No. 25-cv-06487, 2025 WL 2691143, at *1-4 (N.D. Cal. Sept. 19, 2025); *Lopez Benitez*, 2025 WL 2371588, at *1-2, *14-15; *Valesquez*, 2025 WL 1953796, at *1, *3, *18.

62. Advocates have also sued ICE to stop it from arresting noncitizens at immigration courthouses and the EOIR to prevent it from dismissing noncitizens' removal proceedings without proper process. See, e.g., Compl., *African Cmtys. Together v. Lyons*, 25-cv-6366 (S.D.N.Y. Aug. 1, 2025), ECF No. 1; Compl., *A.M. v. U.S. Dep't of Homeland Sec.*, 25-cv-2308 (S.D. Cal. Sept. 4, 2025), ECF No. 1; Am. Compl., *Pablo Sequen v. Albarran*, No. 25-cv-6487 (N.D. Cal. Sept. 18, 2025), ECF No. 32.

63. The City and State of New York filed amicus briefs in support of enjoining these actions in *African Communities Together v. Lyons*, 25-cv-6366 (S.D.N.Y.), due to their concern that immigration court arrests and dismissals are damaging trust in the justice system as a whole and chilling participation in their state and local court proceedings. See Order, *African Cmtys. Together v. Lyons*, 25-cv-6366 (S.D.N.Y. Aug. 26, 2025), ECF No. 47; Letter Mot. at 10-11, *African*

---

[15] Masked ICE Arrests Raise Urgent Questions About U.S. Immigration Practices, The Riverdale Press (June 26, 2025), https://www.riverdalepress.com/stories/masked-ice-arrests-raise-urgent-questions-about-us-immigration-practices,187060.

[16] Brian Strassburger, S.J. & William Critchley-Menor, S.J., What We Saw During An ICE Arrest & Immigration Court Hearing: The Breakdown of Justice in America, America: The Jesuit Review (July 11, 2025), https://www.americamagazine.org/politics-society/2025/07/11/ice-immigration-court-deportation-injustice-251119.

[17] *Id*.

[18] Veronica Cardenas, I Was Once an ICE Prosecutor. What I See Now in Immigration Courts Is Disturbing, The Hill (July 17, 2025, 8:00AM), https://thehill.com/opinion/immigration/5404863-i-was-once-an-ice-prosecutor-what-i-see-now-in-immigration-courts-is-disturbing/

*Cmtys. Together v. Lyons*, 25-cv-6366 (S.D.N.Y. Aug. 25, 2025), ECF No. 44; Brief for Amicus Curiae City of New York in Supp. of Pls.' Mot. for a Stay at 9-10, *African Cmtys. Together v. Lyons*, 25-cv-6366 (S.D.N.Y. Aug. 18, 2025), ECF No. 32-1.

64. On September 12, 2025, the U.S. District Court for the Southern District of New York preliminarily stayed the EOIR's dismissal guidance as to removal proceedings conducted in Manhattan and the Bronx pending a full review of its merits. Op. & Order at. 46, *African Cmtys. Together v. Lyons*, 25-cv-6366 (S.D.N.Y. Sept. 12, 2025), ECF No. 51.

65. These rulings reflect the heightened public and judicial scrutiny surrounding these practices and further underscore the urgency of public access to Defendants' policies and guidance.

**vi. Extensive Media Coverage & Lack of Transparency**

66. Immigration court arrests and dismissals and public opposition to this new enforcement tactic are the subject of widespread and exceptional media coverage.

67. Since May 20, 2025, national, state, and local media outlets have published hundreds of articles about arrests and dismissals, many of which have expressed doubts about this new enforcement tactic's legality.

68. Media coverage has discussed Defendants changing policies and guidance to facilitate this enforcement tactic.[19]

69. Media coverage has also suggested that immigration judges and OPLA prosecutors no longer retain the discretion to dismiss cases on a case-by-case basis.[20]

70. Media coverage has also alluded to the EOIR collaborating and

[19] See, e.g., Aleaziz et al, supra n.8.

[20] See, e.g., Jose Pagliery, Ex-Immigration Judge Reveals Tactics Used to Arrest Migrants Who Show Up for Court, NOTUS (Aug. 14, 2025, 5:18 AM), https://www.notus.org/courts/former-immigration-judge-court-hearings-ice-arrest; Aleaziz et al, supra n.8.

coordinating with ICE to further immigration court arrests and dismissals.[21]

71. Media coverage has also referenced OPLA collaborating and coordinating with ERO to facilitate immigration court arrests.[22]

72. Defendants have not disclosed their new policies and guidance for immigration court arrests and dismissals, notwithstanding a statutory duty to do so. See 5 U.S.C. 552(a)(2)(B) (obligating Defendants to make their "statements of policy" available for public inspection).

73. Nor have Defendants clarified the extent that OPLA prosecutors retrain discretion to consider dismissal on case-by-case basis or the extent that the EOIR and ICE and OPLA and ERO are coordinating arrests of noncitizens in immigration courts. The withheld guidance constitutes 'statements of policy' and 'interpretations' of general applicability that FOIA require agencies to affirmatively disclose, independent of any request.

**B. EOIR FOIA Requests**

74. Amidst the significant, public controversy over immigration court arrests and dismissals, including those in the local communities represented by Plainitff, Plaintiff filed FOIA requests with the EOIR on August 11, 2025, requesting documents related to its guidance for immigration court arrests,

---

[21] See, e.g., Pagliery, supra n.10; Natalie Yahr, Wisconsin Asylum Seeker Miguel Robles Detained in Unprecedented Wave of Courthouse Arrests, Racine County Eye (June 30, 2025), https://racinecountyeye.com/2025/06/30/miguel-robles-immigration-asylum/; Audrey Conklin & Bill Melugin, Trump's ICE Launches Bold Courthouse Migrant Arrest Strategy to Fast-Track Deportations Biden Avoided, Fox News (June 9, 2025, 4:00 AM), https://www.foxnews.com/us/trumps-ice-launches-bold-courthouse-migrant-arrest-strategy-fast-track-deportations-biden-avoided; Angélica Franganillo Díaz & Priscilla Alvarez, ICE Targets Migrants for Arrest at Courthouses as Trump Administration Intensifies Deportation Push, CNN (June 2, 2025 5:00 AM), https://www.cnn.com/2025/06/02/politics/ice-arrests-migrants-courthouse; Aleaziz et al, supra n.8

[22] See, e.g., Luis Ferré-Sadurní, Immigrants File Class-Action Lawsuit to Stop ICE Courthouse Arrests, NY Times (July 16, 2025), https://www.nytimes.com/2025/07/16/nyregion/trump-ice-arrests-lawsuit-immigrants.html; Nisa Khan, When ICE Is Waiting at Immigration Court What Can Advocates Do?, KQED (July 7, 2025), https://www.kqed.org/news/12047018/how-legal-experts-advocates-are-responding-to-the-detention-of-asylum-seekers; Hamed Aleaziz, Under Pressure From the White House, ICE Seeks New Ways to Ramp Up Arrests, NY Times (June 11, 2025), https://www.nytimes.com/2025/06/11/us/politics/ice-la-protest-arrests.html; Melissa Gomez & Rachel Uranga, Father Ripped From Family As Agents Target Immigration Courts, Arresting People After Cases Dismissed, Los Angeles Times (May 24, 2025, 3:00 AM), https://www.latimes.com/california/story/2025-05-24/ice-agents-swarm-immigration-courts-arresting-people-after-cases-dismissed.

communications with ICE and other agencies about immigration court arrests and dismissals, its decision to lock out the public from immigration courts while these arrests were taking place, as well as security footage of the actual arrests (hereinafter "EOIR Requests").

75. Plaintiff sought expedited processing of each EOIR Request so she can educate the public about agency guidance for arrests and any coordination between the EOIR and ICE before debate about the legality of these arrests and dismissals ends and courts address the matter. There is an urgent public interest in timely disclosure of these records because the policies at issue continue to be pushed; the enforcement actions directly affect noncitizens in immigration courts in Sacramento, the rest of California, and throughout the country; and courts are actively adjudicating challenges to these practices.

76. Ms. Krell's role as a California Assemblywoman puts her in a position of representing her local constituents as well as engaging in policy debates and conversations for the entire state of California and its residents. She needs to know what is happening so she can be informed, and so she can inform the public.

77. Among the organizations directly impacted by the activity at the immigration courts is Acacia Center for Justice, a non-profit, non-governmental organization that supports and partners with a national network of human rights defenders who provide free-of-charge legal assistance and defense to immigrants at risk of detention or deportation. ACJ promotes access to legal counsel for all immigrants at risk of detention or deportation. ACJ is deeply invested in ensuring that immigrants and their families are able to safely and securely pursue their legal cases, while promoting access to *pro bono* and nonprofit counsel for people who would otherwise be forced to navigate immigration court proceedings without legal support. One strategy ACJ employs to promote volunteer attorney engagement and access to justice for *pro se* individuals in legal proceedings is to observe Master Calendar Hearings and document practices that will better prepare volunteer

attorneys to take on immigration representation. An ACJ advocate was among those locked out of the courthouse on June 13, 2025, and the individuals ACJ advocates for are among those who have hearings in the affected courthouses. Critically, court access was denied to an ACJ attorney advocate despite ACJ staff calling the preceding day to notify the court of the visit and confirm the docket schedule with the court clerk. No court closure or public access restrictions were flagged during this call. Plaintiff Krell's FOIA requests sought information directly related to this activity.

78. Likewise, advocates from the California Immigration Project were directly impacted by EOIR's court closures. California Immigration Project ("CIP") is a 501(c)(3) nonprofit legal services organization providing pro bono community outreach and education, public policy advocacy, and legal assistance and representation for immigrant communities in California. CIP's mission is to empower immigrant communities by providing free, high-quality legal services, education, and community advocacy across California. CIP engages in extensive community education throughout Sacramento and the state to equip underserved communities with information about their rights and recent developments in immigration law and policy. CIP's advocates were among those locked out of the affected courthouses. The individuals that CIP represents are among those who have hearings in the affected courthouses. Plaintiff Krell's FOIA requests sought information directly related to this activity, especially after redacted documents showing a CIP attorney's attempt to access the shuttered Sacramento building were produced by EOIR following Krell's June FOIA request.

79. Plaintiff made requests in six discreet areas via twenty-four specific and narrowly-tailored requests. Many of these requests were limited to either Sacramento, San Francisco, or San Diego Immigration Courts. Others related to specific employees of EOIR and/or DHS. They also listed specific date ranges to be searched.

80. To date, not a single document has been produced.

81. On August 18, 2025, Attorney Advisor Jennifer Perez Santiago sent an email stating that Plaintiff's request needed to be narrowed because it would be unreasonably burdensome to conduct the search.

82. A response was sent to EOIR's FOIA request department (including Ms. Perez Santiago) on August 22, 2025 which, in part, requested EOIR to specific which specific requests EOIR believed were overbroad.

83. Matthew Broussard, on behalf of EOIR, responded on September 9, 2025, stating that Plaintiff should identify the specific arrest(s) they want footage of, and that to request a communication or directive, a subject matter had to be specified. Of course, the information regrading specific requests is solely within the control of the EOIR and government agencies, rendering this request unreasonable.

84. After Plaintiff followed up, Mr. Broussard sent a chart on September 19, 2025 listing purported reasons why certain requests could not be responded to, and proposed amendments to many of the remaining requests.

85. Plaintiff replied to each of EOIR's suggestions on October 5, 2025, agreeing to narrow certain requests and further refine others, in an effort to meet and confer with EOIR to expedite production. However, Plaintiff did not hear from EOIR again until December 2, 2025 despite following up with them on the same email chain on October 27; November 18; and December 1, 2025.

86. When Mr. Broussard did finally respond on December 2, 2025 it was to say that the request had been reassigned and that he was copying the new point of contact.

87. Plaintiff responded to the new point of contact, Anupriya Krishna, that same day and noted that given agreement had already been reached on a number of requests, Plaintiff would agree to a rolling production while the remainder of the requests were discussed.

88. Plaintiff followed up again on December 8, 2025. A response was received on December 10, 2025 from Justine Fuga, SCOP Associate General Counsel for EOIR, to whom the request had been reassigned yet again.

89. On December 11, 2025 Ms. Fuga provided further responses, including having unilaterally "closed" several of Plaintiff's requests. Plaintiff responded requesting Ms. Fuga's availability for a meet and confer to discuss a timeline for production regarding the agreed upon requests, and specifically stating that Plaintiff did not agree to the unilateral closures and wanted to discuss them as well.

90. After another follow-up email from Plaintiff on December 17, 2025 Ms. Fuga's responded on December 29, 2025 (more than four months after the August FOIA request) stating that EOIR was conducting a search and a timeline would be shared with Plaintiff once the search was complete. Ms. Fuga ignored Plaintiff's request to meet and confer, and further ignored a follow up email on January 14 asking for a response related to the meet and confer and production.

91. As a result of EOIR's failure to comply with its statutory duties, and following a detailed record of meet and confer to narrow some of the requests, Plaintiff prepared this instant complaint. On the eve of filing, on February 6, 2026, Ms. Krell received a further communication from Ms. Fuga. That correspondence rejects Ms. Krell's request for a telephonic meet and confer to discuss the requests, and provides no timeline for EOIR's production, other than to say certain documents are under review and "should" be produced "soon." The communication further ignores the concerns Ms. Krell raised in previous communications concerning EOIR's unilateral "closing" of certain requests.

92. Thus, despite repeated efforts to narrow and clarify their requests, Plaintiff has received no records, no expedited-processing determination, and no substantive response within FOIA's statutory deadlines. Defendant has made it clear that its strategy is to delay, deny, and reassign.

## V. CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION

### VIOLATION OF THE FREEDOM OF INFORMATION ACT (5 U.S.C.§ 552)

93. Plaintiff incorporates the above paragraphs as if fully set forth herein.

94. Defendant's first violation of the Freedom of Information Act is their failure to conduct a reasonable search.

95. Plaintiff has a legal right under FOIA for Defendants to "make reasonable efforts to search for the records" for records responsive to the EOIR Requests. 5 U.S.C. § 552(a)(3)(C).

96. Despite repeated efforts by Plaintiff to clarify and narrow their requests, and despite specifying particular documents, dates, and personnel, Defendant EOIR has not conducted reasonable searches for the requested records.

97. Defendant has also prematurely and unilaterally closed requests even over Plaintiff's objection.

98. Defendant has also repeatedly reassigned the requests, provided no rolling production, and failed to respond substantively to Plaintiff's follow-up inquiries, further demonstrating the unreasonableness of their search efforts.

99. The failures have prevented Plaintiff and the public from timely access to records of substantial public interest and violate FOIA's statutory requirement that agencies conduct reasonable searches for records in their possession, custody, or control See 5 U.S.C. § 552(a)(3).

100. Defendant has also violated the Freedom of Information Act by its failure to make responsive records promptly available.

101. Plaintiff has a legal right under FOIA to obtain prompt production of all reasonably segregable non-exempt portions of all records sought in the EOIR Requests. Id. § 552(a)(3)(A).

102. Despite repeated efforts to clarify and narrow the requests, and despite specifying particular documents, dates, and personnel, Defendant has yet to make any responsive records available to Plaintiff.

103. Defendant has also failed to release even partial or rolling productions of non-exempt material, and has not provided any justification for withholding records, further violating FOIA's prompt-production requirement.

104. These ongoing failures prevent Plaintiff and the public from timely access to records of substantial public interest, impede informed participation in ongoing public debate, contravene FOIA's statutory purpose of ensuring transparency in federal agency activity, and prevent Plaintiff from providing crucial information to the individuals they represent and their communities.

105. By failing to make records available promptly, Defendant has violated FOIA and its implementing regulations.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests the following relief:

A. Assume jurisdiction over the matter;

B. Expedite consideration of this case pursuant to 28 U.S.C. § 1657(a);

C. Order Defendants to grant Plaintiff's expedited processing of the EOIR Requests and review any prior denials of such expedited processing;

D. Order Defendant to process the EOIR Requests immediately and without further delay;

E. Order Defendant to conduct reasonable searches for all records responsive to the EOIR Requests in accordance with 5 U.S.C. § 552(a)(3);

F. Order Defendant to disclose promptly responsive non-exempt records in their entirety and all reasonably segregable, non-exempt parts of other responsive records;

G. Review any and all of Defendant's decisions to redact or withhold information in responsive records as exempt from disclosure;

H. Award Plaintiff costs and reasonable attorneys' fees in this action as provided by 5 U.S.C. § 552(a)(4)(E);

I. Declare the Defendants' failure to comply with FOIA, its implementing regulations, and their statutory obligations violated Plaintiff's rights; and

J. Grant such other and further relief as the Court may deem just and proper.

## VII. JURY DEMAND

Plaintiff demands trial by jury of all issues so triable as of right.

DATED: February 11, 2026

**SINGLETON SCHREIBER, LLP**

*/s/ Andrew D. Bluth*

Andrew Bluth (SBN 232387)
1414 K St Ste 470
Sacramento, CA 95814-3966
Telephone: 916-775-5894
abluth@singletonschreiber.com

Maggy Krell (SBN 226675)
3053 Freeport Blvd. #152
Sacramento, CA 95818
Telephone: 916-529-0468
maggykrell@gmail.com

*Attorneys for Plaintiff*

# EXHIBIT A

STATE CAPITOL
P.O. BOX 942849
SACRAMENTO, CA 94249-0006
(916) 319-2006
FAX (916) 319-2106

Assembly
California Legislature

MAGGY KRELL
ASSEMBLYMEMBER, SIXTH DISTRICT

June 14, 2025

**FOIA Officer**
Executive Office for Immigration Review
U.S. Department of Justice
Office of General Counsel
5107 Leesburg Pike, Suite 2600
Falls Church, VA 22041
EOIR.FOIARequests@usdoj.gov

**RE: FOIA Request Concerning Closure of Public Access and Detentions at Sacramento Immigration Court on or about June 12-13, 2025**

Dear FOIA Officer,

Pursuant to the Freedom of Information Act, 5 U.S.C. § 552, I submit this request for records related to the restriction of public access and apparent detentions at the Sacramento Immigration Court, located in the John E. Moss Federal Building, June 9–14, 2025.

As reported by The *Sacramento Bee* ("Guards bar volunteers, reporters from Sacramento immigration court hearings," June 14, 2025), legal observers, members of the press, and those there to support immigrants were barred from entering the building. According to the article, witnesses described a lockdown of the court building and the detention of individuals—including possible asylum seekers—by Immigration and Customs Enforcement (ICE) personnel who were on-site.

As a California State Assemblymember representing Sacramento, I am deeply concerned by this breach of public access, transparency, and due process, and I request all records that explain how and why this occurred.

I specifically request the following records:

1. Any orders, directives, or internal communications from DHS, ICE, EOIR, or any related agency that resulted in limiting or denying access to the Sacramento Immigration Court for:

STATE CAPITOL
P.O. BOX 942849
SACRAMENTO, CA 94249-0006
(916) 319-2006
FAX (916) 319-2106



- Members of the press
- Volunteers, legal observers, and immigrant rights advocates
- Family members or community members not directly involved in the day's cases
- Attorneys

2. All communications (emails, memos, text messages, or meeting summaries) between DHS/ICE and EOIR officials, court security, building management, or federal protective services regarding:

   - The decision to restrict public access
   - The deployment or presence of ICE agents within or around the courtroom

3. Incident reports, risk assessments, after-action reports, or legal reviews related to:

   - Any security or public safety concern that triggered the closure or lockdown
   - The detention of individuals by ICE within the courthouse or immediately outside

4. Records identifying the individuals or agencies who authorized or implemented these access restrictions, including legal justification or procedural guidance issued prior to or during the week of June 9–14.

5. Any communications with media, elected officials, or members of the public notifying, explaining or responding to the closure.

**Fee Waiver and Expedited Processing**

I respectfully request a waiver of all fees, as this request is submitted in my official capacity as a public official, and the information sought is in the public interest.

STATE CAPITOL
P.O. BOX 942849
SACRAMENTO, CA 94249-0006
(916) 319-2006
FAX (916) 319-2106

Assembly
California Legislature

MAGGY KRELL
ASSEMBLYMEMBER, SIXTH DISTRICT

Additionally, I request expedited processing pursuant to 28 C.F.R. § 16.5(e), given the urgency of informing the public about actions that may have undermined access to immigration court proceedings for my constituents.

If clarification or narrowing of this request would facilitate faster processing, I am available to confer. I will accept records in electronic format.

Thank you for your prompt attention. I look forward to your response.

Respectfully,

Maggy Krell

Maggy Krell
Assemblymember, 6 District

# EXHIBIT B

STATE CAPITOL
P.O. BOX 942849
SACRAMENTO, CA 94249-0006
(916) 319-2006
FAX (916) 319-2106

Assembly
California Legislature

MAGGY KRELL
ASSEMBLYMEMBER, SIXTH DISTRICT

August 11, 2025

**FOIA Officer**
Executive Office for Immigration Review
U.S. Department of Justice
Office of General Counsel
5107 Leesburg Pike, Suite 2600
Falls Church, VA 22041

**RE: FOIA Request Concerning Immigration Courts**

Dear FOIA Officer,
I appreciate your prompt attention to FOIA request 2025-71675 concerning the public closure and immigration detentions at the John E. Moss Federal Building in Sacramento in June of 2025. Based on the information your office provided and other publicly available information, I am requesting additional records as set forth below.

Pursuant to the Freedom of Information Act, 5 U.S.C. §552, I submit this request for records related to activity at or concerning California Immigration Courts impacting access to justice and the due process rights of immigrants. I specifically request the following records:

**<u>Sacramento Building; 650 Capitol Mall, Sacramento CA 95814 ("Sacramento Immigration Court")</u>:**

1. All Communications from March 1, 2025 to present within the Department of Homeland Security (DHS) about the transfer of recently apprehended individuals from Sacramento to Stockton for processing.

2. All security footage from June 1, 2025 to present of any arrests or other immigration enforcement activity taking place in the public hallways or other public areas of the Sacramento Immigration Court.

3. All memoranda, directives, or communications to or from Judge Jonathan Hitesman concerning arrests made at the Sacramento Immigration Court since June 1, 2025.

STATE CAPITOL
P.O. BOX 942849
SACRAMENTO, CA 94249-0006
(916) 319-2006
FAX (916) 319-2106

Assembly
California Legislature
MAGGY KRELL
ASSEMBLYMEMBER, SIXTH DISTRICT

4. All memoranda, directives, or communications to or from Judge Jonathan Hitesman concerning any closure of the Sacramento Immigration Court to the public since June 1, 2025.

5. All memoranda, directives, or communications to or from Kevin Riley concerning arrests made in the public hallways or other public areas at the Sacramento Immigration Court since June 1, 2025.

6. All memoranda, directives, or communications to or from Kevin Riley concerning any closure of the Sacramento Immigration Court to the public since June 1, 2025.

7. All memoranda, directives, or communications to or from Leslie Ungerman concerning arrests made in the public hallways or other public areas at the Sacramento Immigration Court since June 1, 2025.

8. All memoranda, directives, or communications to or from Leslie Ungerman concerning any closure of the Sacramento Immigration Court to the public since June 1, 2025.

9. Any communication between the Office of Chief Counsel at ICE and any Assistant Chief Immigration Judge regarding any closure to the public of the Sacramento Immigration Court.

**San Francisco Immigration Courts; 100 Montgomery Street San Francisco, CA 94104 and 630 Sansome Street, San Francisco, CA 94111 ("San Francisco Immigration Courts"):**

1. All memoranda or communications from Judge Loi McCleskey to other Immigration Judges in June or July 2025.

2. All memoranda from Judge Loi McCleskey to other San Francisco Immigration Judges from March 1, 2025 to present concerning immigration enforcement activity by ICE or other agencies in the public hallways or other public areas within the San Francisco Immigration Courts.

STATE CAPITOL
P.O. BOX 942849
SACRAMENTO, CA 94249-0006
(916) 319-2006
FAX (916) 319-2106

Assembly
California Legislature
MAGGY KRELL
ASSEMBLYMEMBER, SIXTH DISTRICT

3. All Communications within or between ICE, EOIR, and the Federal Protective Service from March 1, 2025 to present concerning arrests made in the public hallways or other public areas of any San Francisco Immigration Courts.

4. All Communications within or between ICE, EOIR, and FPS from March 1, 2025 to present concerning the closure to the public of any San Francisco Immigration Courts.

5. All security footage from June 1, 2025 to present of any arrests or other immigration enforcement activity taking place in the public hallways or other public areas of any San Francisco Immigration Courts.

**San Diego Immigration Court; 880 Front Street, San Diego, CA 92101 ("San Diego Immigration Court")**

1. All security footage from June 1, 2025 to present of any arrests or other immigration enforcement activity taking place in the public hallways or other public areas of the San Diego Immigration Court.

**Acting Director Sirce Owen Memoranda and Directives to Immigration Judges and Assistant Chief Immigration Judges:**

1. All memoranda, communications, or directives issued from Sirce Owen to any Assistant Chief Immigration Judge or other Immigration Judge from January 2025 to present.
2. The specific memoranda issued by email from Sirce Owen to Immigration Judges in June or July 2025 concerning rulings on motions to dismiss.
3. All memoranda or communications from Sirce Owen from January 2025 to present to any EOIR employee, official, contractor, or individual on detail from another agency concerning rulings or actions by any Assistant Chief Immigration Judge or other Immigration Judge.
4. All memoranda or communications from Sirce Owen from January 2025 to present concerning arrests or other immigration enforcement activity in public hallways or other public areas at Immigration Courts.
5. All memoranda or communications to or from Sirce Owen from January 2025 to present concerning the termination of any Immigration Judge.

STATE CAPITOL
P.O. BOX 942849
SACRAMENTO, CA 94249-0006
(916) 319-2006
FAX (916) 319-2106

Assembly
California Legislature
MAGGY KRELL
ASSEMBLYMEMBER, SIXTH DISTRICT

**Directives Related to Immigrants Seeking Asylum**

1. All communications and directives to, from, or within DHS from June 1, 2025 to present regarding the policy for the apprehension of individuals with pending affirmative asylum applications with USCIS.
2. All communications and directives to, from, or within DHS from June 1, 2025 to present regarding any decisions to apprehend individuals with pending affirmative asylum applications with USCIS.
3. All communications and directives to, from, or within DHS from June 1, 2025 to present regarding any specific apprehension of any individual with pending affirmative asylum applications with USCIS.

**Other Communications Impacting Access and Security**

1. All directives, memoranda, or communications from the Department of Homeland Security to any EOIR employee, official, contractor, or individual on detail from another agency from March 1, 2025 to present regarding arrests or other immigration enforcement activity in the public areas of any Immigration Court.
2. Any communication between the Office of Chief Counsel at ICE and any Assistant Chief Immigration Judge regarding any closure to the public of any Immigration Court.

**Fee Waiver and Expedited Processing**

I respectfully request a waiver of all fees, as this request is submitted in my official capacity as a public official, and the information sought is in the public interest. Additionally, I request expedited processing pursuant to 28 C.F.R. § 16.5(e), given the urgency of informing the public about actions that may have undermined access to immigration court proceedings, access to counsel or substantive due process rights for my constituents and their family members.

If clarification or narrowing of this request would facilitate faster processing, I am available to confer. I will accept records in electronic format on a rolling basis as they become available.

STATE CAPITOL
P.O. BOX 942849
SACRAMENTO, CA 94249-0006
(916) 319-2006
FAX (916) 319-2106

Assembly
California Legislature

MAGGY KRELL
ASSEMBLYMEMBER, SIXTH DISTRICT

Thank you for your prompt attention. I look forward to your response.

Respectfully,

Maggy Krell

Maggy Krell
Assemblymember, 6 District